# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00800-CR

**Earl Johnny Baugh, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-05-201186, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the district court denied his motion to suppress evidence, appellant Earl Johnny Baugh plead guilty to the offense of unlawful possession of a firearm by a felon and was sentenced to three years' confinement. *See* Tex. Pen. Code Ann. § 46.04(a) (West Supp. 2005). In one issue, Baugh contends that the court erred in denying his motion to suppress evidence of the gun as fruit of an unconstitutional seizure. *See* U.S. Const., Amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 14.03 (West Supp. 2005), arts. 18.01, 38.23(a) (West 2005). We affirm.

## BACKGROUND

Baugh's motion to suppress alleged that he was walking up the driveway to a residence when he was detained by an Austin police officer. While attempting to run from the officer, Baugh threw his gun over the fence of a nearby residence. He was then apprehended. Baugh

argues that his constitutional and statutory rights were violated because the officer had no reasonable suspicion to justify the detention and because the seizure of the firearm was outside the scope of any justified search.

Two witnesses testified at the August 15, 2005 suppression hearing: Travis County Sheriff's Deputy Don Xavier Rios and Baugh. Rios stated that he was part of a team executing a no-knock search warrant in the pre-dawn hours of March 9, 2005, at the residence of a suspected narcotics dealer. The execution of the warrant was considered a high-risk situation due to the criminal histories of the occupants, the expectation that they were armed, and the presence of surveillance equipment on the exterior of the residence. Rios recalled that three unmarked police vehicles were parked in front of the house, along with a large "SWAT van." Rios was standing in the shadows of the driveway at the front of the residence to provide security and surveillance while the team was inside the house.

As Rios was keeping surveillance, he observed Baugh parking his car and approaching the target house. Rios stated that he stepped out from the shadows, illuminated himself with his flashlight and said, "Deputy Rios with the Travis County Sheriff's Office. Where are you going?" Baugh told Rios that he was there to visit his cousin and began walking away. When Baugh continued walking, despite multiple commands to stop, Rios called for backup and drew his M16 assault rifle from a sling at his side. Rios stated that Baugh began to move away more quickly, jogging along the side of the house, where Rios saw him throw a small black object over the fence into an adjacent yard. After throwing the object, Baugh heeded Rios's command to stop and was detained. Officers searched the neighboring yard and located a 9mm Smith & Wesson handgun, which was loaded and had a round in the chamber.

2

Baugh testified that he had gone to the residence in the pre-dawn hours to "pick up some money that he [the homeowner] owed me for a car I had bought from him." Baugh claimed that Rios raised his weapon as soon as he stepped out from the shadows in the driveway. Baugh stated that while he was walking away, he put his hands up in compliance with Rios's command. But Baugh admitted that he did not obey Rios's command to "get on the ground." When Rios lowered his weapon, Baugh, who had been carrying a gun, ran toward the side of the house and threw the gun over a fence. Baugh testified that Rios could not have seen him throw the gun.

At a subsequent hearing on August 29, 2005, the district court denied Baugh's motion to suppress. The court stated on the record[1] that, "considering it was 5:00 in the morning [and] there was an individual that was approaching a house where they were executing a narcotics warrant," the officer "had every right to stop and question the person that was approaching that house." The court also found that "Baugh was never seized" because "he appears to have started immediately walking." Pursuant to a negotiated plea of guilty, on October 19, 2005, Baugh was convicted of "intentionally or knowingly possessing a firearm before the fifth anniversary of his release from confinement for conviction of a felony" and sentenced to three years' confinement. *See* Tex. Pen. Code Ann. § 46.04 (West Supp. 2005). This appeal followed.

## DISCUSSION

Baugh asserts that the trial court erred in denying his motion to suppress evidence because the gun was obtained as the result of an unconstitutional seizure. He specifically argues that

---

[1] The court did not issue written findings of fact, nor were any requested.

3

he threw the gun over the fence only after he had been seized and that his abandonment of the gun was the product of police misconduct.

**Standard of review**

We apply a bifurcated standard when reviewing a trial court's ruling on a motion to suppress evidence, giving "almost total deference to a trial court's determination of historical facts, especially when the findings are based on an evaluation of credibility and demeanor, and reviewing de novo the court's application of the law of search and seizure." *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Applying these standards, we will defer to the district court's fact findings but determine *de novo* whether the facts found by the court establish that Baugh was seized before he threw the gun over the fence.

**Unconstitutional seizure**

Baugh contends that a seizure occurred when Rios raised his weapon, because brandishing a weapon is "tantamount to the use of force." Alternatively, Baugh asserts that a seizure occurred when he raised his hands in submission to Rios's show of authority. Baugh argues that he did not abandon his gun until after his seizure by the officer.

Evidence obtained as the fruit of an unconstitutional seizure is inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961); Tex. Code Crim. Proc. Ann. art 38.23(a) (West 2005). But property that is abandoned before a seizure occurs is admissible. *See California v. Hodari D.*, 499 U.S. 621, 629 (1991) (holding that cocaine abandoned while defendant was running was not fruit of seizure because defendant was not seized until he was subsequently tackled by officer). To be

4

entitled to suppress evidence of the gun, Baugh must show that the officers obtained it as the result of an unconstitutional seizure. *See id.* If the gun was abandoned before any seizure occurred, it should not be suppressed.

When a defendant seeks to suppress evidence on the basis of an unconstitutional seizure, he has the initial burden of defeating the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). The defendant satisfies this initial burden of proof by establishing that: (1) a seizure occurred and (2) no warrant was obtained. *Id*. Only if the defendant establishes both of these facts does the burden shift to the State to prove the reasonableness of its actions. *Id.* at 9-10; *Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd). Here, it is undisputed that no warrant was obtained for Baugh. Accordingly, the only question is whether a seizure occurred before Baugh abandoned the gun.

Under the federal and state constitutions, a seizure may occur in either of two ways: (1) when a person is subjected to physical force, however slight, or (2) when a person submits to a show of authority. *See Hodari D.*, 499 U.S. at 624-26; *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995). A "show of authority" occurs when the actions of the police would cause a reasonable person to believe that he or she is not free to leave. *See Hodari D.*, 499 U.S. at 628. Significantly, a seizure of a citizen does not occur until the citizen "has yielded to the officer's show of authority or been physically forced to yield." *Johnson*, 912 S.W.2d at 236. "A show of authority, without an application of physical force, to which a suspect does not yield, is not a seizure under the Fourth Amendment." *Id*.

Though Rios and Baugh gave differing testimony, we conclude that, under either version of events, no seizure occurred until *after* Baugh abandoned his gun. Both testified that

5

Baugh began walking away from Rios upon seeing him, and Baugh did not heed the officer's command to stop until after Baugh had thrown the gun over the fence. Even if we credit Baugh's testimony that he raised his hands in submission, Baugh did not simply yield; he ran. Baugh did not voluntarily yield to Rios's show of authority, and Baugh was not physically forced to yield by any of Rios's actions. Accordingly, we conclude that Baugh was not seized until after he threw his gun over the fence.

**Police misconduct**

Because we conclude that no seizure occurred until after Baugh abandoned his gun, Baugh has not met his initial burden of defeating the presumption of proper police conduct. *See Russell*, 717 S.W.2d at 9. Absent that showing, the State is not required to prove the reasonableness of its actions. *See id.*, 717 S.W.2d at 9-10; *Hernandez*, 963 S.W.2d at 924.

## CONCLUSION

Having overruled Baugh's sole issue on appeal, we affirm the district court's judgment.

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: August 11, 2006

Do Not Publish