NO. 07-07-0154-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 6, 2008

______________________________


BENJAMIN HUDSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 5635; HONORABLE KELLY G. MOORE, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          Following a plea of guilty, Appellant, Benjamin Hudson, was convicted of possession
of methamphetamine. Punishment was assessed at eighteen months confinement in a
state jail facility, suspended in favor of five years community supervision, and a $750 fine. 
By a sole issue, Appellant questions whether the trial court erred in denying his motion to
suppress evidence seized in violation of his constitutional rights under the Fourth
Amendment of the United States Constitution and Article I, § 9 of the Texas Constitution
and in violation of article 38.23 of the Texas Code of Criminal Procedure.


 We affirm.
Factual Background
          The only witness to testify at the suppression hearing was Officer Gabriel Carrillo.
According to Carrillo, he was on patrol in full uniform on October 7, 2006, when he
observed Appellant walking across a field from a residential neighborhood at approximately
3:50 a.m. As Appellant neared the curb, Carrillo activated his patrol car lights and called
to him. When asked for identification, Appellant produced a social security card and a
plastic movie card. He also provided his name and date of birth. According to Carrillo,
Appellant’s eyes were glassy, and he was nervous and shaky. Carrillo questioned him
about the use of controlled substances, specifically, about smoking methamphetamine. 
Carrillo placed Appellant in front of his patrol car and began a pat down search. He
“crushed” the outside of Appellant’s pockets and felt a box-like item which Appellant
claimed were cigarettes. As requested by Carrillo, Appellant removed the item and placed
it on the hood of the patrol car. The officer still noticed a bulge on the side of Appellant’s
pocket and asked him if he had “anything illegal on him.” Appellant removed a baggie of
marihuana from his pocket and placed it on the hood of the patrol car. At that point,
Carrillo placed Appellant under arrest for possession of marihuana. Following Appellant’s
arrest, Carrillo conducted a warrant check to confirm his identity and he discovered a
criminal trespass warrant issued for Appellant. 
          Appellant was taken to the police department for booking. During a search incident
to arrest, the officer reached into Appellant’s pocket and found a small plastic baggie
containing methamphetamine and some cash. Eventually, Appellant was charged with
possession of methamphetamine, not marihuana. 
          Appellant filed a motion to suppress illegally seized evidence. Following a hearing,
the trial court denied the motion, and Appellant plead guilty and was convicted of
possession of methamphetamine. By a sole issue, he challenges the trial court’s order
denying his motion to suppress.
Standard of Review--Motion to Suppress
          A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In reviewing a trial court’s
determination of the reasonableness of either a temporary investigative detention or an
arrest, appellate courts use a bifurcated standard of review. Amador v. State, 221 S.W.3d
666, 673 (Tex.Crim.App. 2007). Almost total deference is given to a trial court’s
determination of the historical facts that the record supports especially when the trial
court’s fact findings are based on an evaluation of credibility and demeanor. St. George
v. State, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex.Crim.App. 1997). Appellate courts also afford the same level of deference to a trial
court’s ruling on application of law to fact questions or mixed questions of law and fact if
the resolution of those questions turns on an evaluation of credibility and demeanor. 
Montanez v. State, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006). However, for mixed
questions of law and fact which do not fall within this category, appellate courts may
conduct a de novo review of the trial court's ruling. Amador, 221 S.W.3d at 673. Appellate
courts do not engage in their own factual review. Romero v. State, 800 S.W.2d 539, 543
(Tex.Crim.App. 1990). 
          When, as here, no findings of fact were requested nor filed,


 we view the evidence
in the light most favorable to the trial court's ruling and assume the trial court made implicit
findings of fact supported by the record. See State v. Ross, 32 S.W.3d 853, 855-56
(Tex.Crim.App. 2000). If the trial court’s decision is correct on any theory of law applicable
to the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App.
2003); Ross, 32 S.W.3d at 855-56. At a suppression hearing, the trial court is the sole and
exclusive trier of fact and judge of the credibility of witnesses and the weight to be given
their testimony. Id. at 855. Additionally, the legal question of whether the totality of the
circumstances is sufficient to support an officer’s reasonable suspicion is reviewed de
novo. See Madden v. State, 242 S.W.2d 504, 517 (Tex.Crim.App. 2007).  
Encounter versus Detention
          The State urges that because Appellant willingly answered Carrillo’s questions and
cooperated when asked to remove items from his pocket, their interaction was a mere
encounter, not requiring reasonable suspicion of criminal activity.


 We disagree. The
Texas Court of Criminal Appeals has recognized three distinct categories of interactions
between police officers and citizens: encounters, investigative detentions, and arrests.



State v. Perez, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). 
          An encounter is a consensual question and answer interaction between a citizen
and a police officer, in a public place, that does not require reasonable suspicion and does
not implicate constitutional rights. See Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct.
1319, 75 L.Ed.2d 229 (1983); State v. Perez, 85 S.W.3d at 819. An investigative detention
occurs when an individual is encountered by a police officer, yields to the officer’s display
of authority, and is temporarily detained for purposes of an investigation. Johnson v. State,
912 S.W.2d, 227, 235 (Tex.Crim.App. 1989). A person “yields to an officer’s display of
authority” when a reasonable person would not feel free to continue walking or otherwise
terminate the encounter. Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115
L.Ed.2d 389 (1991); State v. Velasquez, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999);
Johnson v. State, 912 S.W.2d at 234-35. An investigative detention is constitutionally
permissible if, under the totality of the circumstances, the officer has reasonable suspicion
supported by articulable facts that the person detained is, has been, or soon will be
engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d
889 (1968); Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Whether
reasonable suspicion exists is determined by considering the facts known to the officer at
the moment of detention. Davis v. State, 947 S.W.2d 240, 243 (Tex.Crim.App. 1997). 
          Activation of overhead lights on a police vehicle does not necessarily make an
encounter non-consensual. See Franks v. State, 241 S.W.3d 135 (Tex.App.–Austin 2007,
no pet. h.). However, when a person stops in response to a patrol car’s emergency lights
rather than of his own accord, an investigatory detention has occurred and reasonable
suspicion is required. In Garza v. State, 771 S.W.2d 549 (Tex.Crim.App. 1989), in
response to an officer turning on his patrol car flashing lights, the defendant stopped his
vehicle at an auto parts store. The officer testified that when he observed the defendant’s
car, he believed the driver resembled a mug shot and contacted other officers by radio that
he was about to stop the individual. Id. at 552. The State argued there was no stop or
seizure because the defendant voluntarily stopped his car at the auto parts store pursuant
to a predetermined plan. Id. at 556. The Court suggested, “it cannot be seriously
maintained that a reasonable person under the circumstances would have believed that
he was free to leave.” Id. at 557. See also Hernandez v. State, 963 S.W.2d 921, 924
(Tex.App.–San Antonio 1998, pet. ref’d) (activating emergency lights would cause a
reasonable person to believe he is not free to leave). But see Franks v. State, 241 S.W.3d
at 142 (activation of patrol car’s overhead lights in an area that appeared dark and
unoccupied except for a single car does not necessarily constitute a detention); Martin v.
State, 104 S.W.3d 298, 301 (Tex.App.–El Paso 2003, no pet.) (citing a New Mexico Court
of Appeals case holding that an officer’s use of overhead lights alone does not necessarily
cause an encounter to be a stop).
          A distinction in the underlying case is that Appellant was not stopped while in a
vehicle. Rather, he was on foot. Nevertheless, a pedestrian is entitled to the protection
of the Fourth Amendment as he walks down the street. See Terry v. Ohio, 392 U.S. 1, 9,
88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Tanner v. State, 228 S.W.3d 852
(Tex.App.–Austin 2007, no pet.), a police officer observed the defendant and a female
companion walking from behind a bar at 3:00 a.m. and flashed his patrol car lights and
signaled for them to stop. The female stopped, but the defendant continued to walk. Id.
at 854. The officer drove towards the defendant, who then stopped. The officer searched
the defendant and found methamphetamine. Id. at 855. Citing Garza, 771 S.W.2d at 558,
the court found, “[t]here is no question that an investigative detention occurred when [the
defendant] stopped walking in response to [the officer’s] demand.” Tanner, 228 S.W.3d
at 856 n.3. 
          Officer Carrillo testified that he observed Appellant walking across a field and that
as Appellant approached the curb, he activated his patrol car lights and called out to him. 
Appellant approached Carrillo and complied with his requests, including removing items
from his pocket, which included marihuana. On cross-examination, Carrillo answered
affirmatively when asked whether activation of his patrol car lights is a communication to
a person to stop. He also testified on cross-examination that had Appellant fled from him
after activating his lights, he might have possibly charged him with evading. No evidence
was presented that Carrillo believed Appellant was in distress, that the area was dark, or
that safety reasons existed for activating the patrol car lights. Under these facts, we
conclude that activation of the patrol car lights caused Appellant to yield to Officer Carrillo’s
show of authority. We further conclude that Appellant did not feel free to leave or decline
Carrillo’s requests. Thus, we find that a detention occurred requiring reasonable suspicion
by Carrillo to stop Appellant. 
Reasonable Suspicion
          The Fourth Amendment of the United States Constitution and Article I, § 9 of the
Texas Constitution protect against unreasonable searches and seizures by government
officials. See Wiede v. State, 214 S.W.3d 17, 24-25 (Tex.Crim.App. 2007); Johnson v.
State, 912 S.W.2d 232-34; Martinez v. State, 72 S.W.3d 76, 81 (Tex.App.–Amarillo 2002,
no pet.). The reasonableness of an investigative detention is determined by a dual inquiry: 
(1) whether the officer’s action was justified at its inception; and (2) whether it was
reasonably related in scope to the circumstances which justified the interference in the first
place. Terry, 392 U.S. at 19-20.
          An investigative detention requires an officer to have reasonable suspicion founded
upon articulable facts that when combined with rational inferences from those facts, would
lead him to reasonably suspect that criminal activity is afoot and that the detainee is
connected to the activity. Id. at 21; Balentine, 71 S.W.3d at 768. These facts must
amount to more than a mere inarticulable hunch or suspicion. Williams v. State, 621
S.W.2d 609, 612 (Tex.Crim.App. 1981). Reasonableness of a search is a question of law
that is reviewed de novo and is evaluated by the totality of the circumstances. Kothe v.
State, 152 S.W.3d 54, 62 (Tex.Crim.App. 2004); Woods v. State, 956 S.W.2d 33, 38
(Tex.Crim.App. 1997). 
          Officer Carrillo testified that he questioned Appellant because he was walking late
at night and because there had been recent criminal mischief and burglaries in the vicinity. 
According to Carrillo, he was conducting “effective patrol” by stopping persons for walking
during the hours of 12:30 a.m. and daylight. On cross-examination, however, he testified
that the “recent” crime in the area had actually occurred some three months earlier and
consisted of a brick being thrown through the back window of a pickup. He could not recall
the type of burglary that occurred. 
          Carrillo testified that no criminal activity had been reported during his shift on the
night he stopped Appellant. Additionally, when he observed Appellant walking across the
field, he did not see him with a brick in his hand nor did he see him carrying any items
common to burglaries. It was not until after Carrillo made contact with Appellant that he
observed glassy eyes and shakiness which lead him to believe that Appellant might be
under the influence of alcohol or narcotics. 
          Although time of day


 and the level of criminal activity in an area may be factors to
consider in determining reasonable suspicion, they are not suspicious in and of
themselves. See Klare v. State, 76 S.W.3d 68, 73-76 (Tex.App.–Houston [14th Dist.]
2002, pet. ref’d). See also Scott v. State, 549 S.W.2d 170, 172-73 (Tex.Crim.App. 1976). 
Time of day and criminal activity in the area are facts which focus on the suspects
surroundings, and not on the suspect himself. Klare, 76 S.W.3d at 75. Thus, an
assessment of the surroundings must raise a suspicion that the particular individual being
stopped is engaged in wrongdoing. Id. at 75, citing U.S. v. Cortez, 449 U.S. 411, 418, 101
S.Ct. 690, 66 L.Ed.2d 621 (1981). Officer Carrillo did not offer any testimony to raise
suspicion that Appellant was engaged in criminal activity prior to initiating contact with him. 
Additionally, there are no independent indicia of reasonable suspicion in the record before
us. Under the totality of the circumstances, we find that the factors cited by Carrillo, i.e.,
time of day and “recent” crime in the area, were a mere pretext for stopping Appellant.
          Although we find that Appellant was illegally detained in violation of his constitutional
rights, we nevertheless agree with the State that the methamphetamine was admissible
because it was discovered subsequent to Officer Carrillo’s discovery of an outstanding
warrant for criminal trespass. Under the attenuation doctrine, evidence may be admitted
if the connection between the initial illegality and the means through which the evidence
was secured is so attenuated as to dissipate the taint. See Welcome v. State, 865 S.W.2d
128, 133 (Tex.App.–Dallas 1993, pet. ref’d); Reed v. State, 809 S.W.2d 940, 944-45
(Tex.App.–Dallas 1991, no pet.). The discovery of an outstanding warrant during an illegal
detention may break the connection between the primary taint and subsequently
discovered evidence. See Johnson v. State, 496 S.W.2d 72, 74 (Tex.Crim.App. 1973). 
See also Fletcher v. State, 90 S.W.3d 419, 420-21 (Tex.App.–Amarillo 2002, no pet.). 
          Officer Carrillo testified that he believed he ran a criminal history check after
Appellant had already been arrested. He also testified that in his effort to identify
Appellant, he discovered the warrant, and Appellant was “going to go to jail” for the
warrant. The methamphetamine was not discovered until Appellant was searched incident
to his arrest at the police department. The record supports admissibility of the
methamphetamine as it was discovered subsequent to the outstanding warrant. The
marihuana, however, would not have been admissible because it was discovered during
an illegal detention and prior to discovery of the criminal trespass warrant. Appellant’s sole
issue is overruled.Conclusion
          We find that Officer Carrillo illegally detained Appellant without reasonable
suspicion. Regardless, we conclude that discovery of the criminal trespass warrant for
Appellant prior to discovery of the methamphetamine provided sufficient attenuation so as
to render the methamphetamine admissible. Accordingly, the trial court did not abuse its
discretion in denying Appellant’s motion to suppress evidence. Consequently, the trial
court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice







Publish.